UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LISANDRO MARTINEZ,**

    **Plaintiff,**

v.                                                                              **CASE NO. 8:06-CV-1050-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security Administration,**[1]

    **Defendant.**
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 14).

applicable legal standards. See 42 U.S.C. § 405 (g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[3]   If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff filed his application for DIB and SSI on October 2, 2002, with an alleged onset of disability of April 20, 2002.[4] (T 53-55, 262-265) Plaintiff's application was denied initially and on reconsideration. (T 37-39, 42-44) Hearings were held before the ALJ on June 8, 2004 and November 2, 2004. (T 313, 333) On July 12, 2005, the ALJ issued a decision denying Plaintiff's application for benefits. (T 12-19) The Appeals Council declined to review the ALJ's decision (T 3-5), making the ALJ's decision the final decision of the Commissioner.

Plaintiff was forty-one years old at the time of the June 8, 2004 hearing with a seventh grade

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

[4] The Commissioner erroneously states that Plaintiff filed his applications on June 3, 1997 and alleged a disability on set date of June 15, 1995 (Dkt. 27 at 1).

education. (T 53, 313, 316) His past work experience was as a farm worker. (T 13, 68) Plaintiff claims disability due to pain in his head, arms, legs and back, anxiety, memory loss, sleep disturbances, depression and hypertension. (T 67, 81-82)

In the decision denying benefits, the ALJ found that after the alleged onset of disability, Plaintiff did not engage in substantial gainful activity since the alleged onset of disability. (T 13) The ALJ further found that Plaintiff suffered from degenerative changes of the lumbar spine, lower back pain, obesity, hypertension, depression and alcohol dependency which is currently in remission. (T 14) The ALJ determined that the above impairments are severe, "but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id.  In reaching his conclusion that Plaintiff was not under a "disability," the ALJ determined that Plaintiff's testimony was not fully credible. (T 16) The ALJ held that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work.[5] Specifically, the ALJ found that Plaintiff's capacity for light work is limited because he must be allowed to sit or stand at will and he is limited to simple, routine and repetitive work. (T 18) Although the ALJ concluded that Plaintiff could not perform his past relevant work, based upon the testimony from a vocational expert ("VE"), the ALJ found that Plaintiff could perform light unskilled jobs in the national economy such as unskilled wrapper and packager,

---

[5] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds. The regulations further provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

unskilled assembler and unskilled tender. (T 17)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner erred in (1) finding that Plaintiff's depressive symptoms did not meet or equal Listing 12.04; (2) finding that Plaintiff could perform a limited range of light work activity; (3) failing to give proper weight to the opinion of Plaintiff's treating physicians and (4) finding that Plaintiff's testimony lacked credibility (Dkt. 23).

**A.**    Plaintiff argues that the ALJ erred by failing to find that Plaintiff's depression disorder met or equaled section 12.04 of the Listing of Impairments.

Plaintiff alleges that the opinions of Plaintiff's treating and consulting physicians establish that he meets or equals Listing 12.04(A). In addition, Plaintiff asserts that his testimony and statements, his GAF scores, and the opinion of his treating physician support a finding that he meets or equals the Listing 12.04(B). The Commissioner contends that, although Plaintiff may have had some symptoms that were consistent with depressive disorder, Plaintiff did not have an impairment or combination of impairments that meets or equals Listing 12.04 because he failed to meet the criteria under Listing 12.04(B).

In order to establish an impairment or combination of impairments which meets or equals the requirements of the listings, Plaintiff must provide specific medical findings which support each of the various requisite criteria for that impairment. Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986). Plaintiff has the burden of proving an impairment meets or equals a listed impairment. Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir.1987).

Section 12.04 of the Listing of Impairments concerns mental disorders that are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Part 404, Subpart P, Appendix 1. The listing requires that a claimant meet a two part test. In addition to establishing the presence of an affective disorder under "A" criteria,[6] a claimant must also demonstrate that the disorder results in functional limitations as set forth in section 12.04(B) (the "B" criteria of the listing) or section 12.04( C)(the "C" criteria of the listing). In order to satisfy the "B" criteria, a claimant must demonstrate that his disorder results in at least two of the following: (1) marked restrictions of activities of daily living, (2) marked difficulty in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence or pace, or (4) repeated episodes of decompensation or deterioration in work or work-like settings which cause withdraw or exacerbation of signs or symptoms.[7] Listing 12.04(B), 20 C.F.R., pt. 404.

In reference to the "B" criteria, Plaintiff first contends that the ALJ improperly discounted Plaintiff's testimony which demonstrated that Plaintiff's depression affected his daily activities. (Dkt. 23 at 4) However, Plaintiff testified that his restrictions of activities of daily living were not caused by his depression, but rather by the total body pain he experienced. (T 323, 325-327)

---

[6] The "A" criteria of the listing requires medically documented persistence, either continuous or intermittent, of at least four of the following symptoms: (a) anhedonia or pervasive loss of interest in almost all activities, (b) appetite disturbance with change in weight, ( c) sleep disturbance, (d) psychomotor agitation or retardation, (e) decreased energy, (f) feelings of guilt or worthlessness, (h) thoughts of suicide, or (i) hallucinations , delusions or paranoid thinking. Listing 12. 04(A), 20 C.F.R., pt. 404.

[7] For the purposes of the mental disorder listings, "marked" means "more than moderate but less than extreme." Furthermore, a "marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." 20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00.

Similarly, Plaintiff's application statements reveal that his difficulties in maintaining social functioning stem from the pain in his back and legs. (T 67) In October 2002, Plaintiff stated he does not get invited to go out with friends as much because he cannot "walk that much." (T 78) In March 2003, Plaintiff explained that the frequent and intense pain he felt prevented him from participating in social activities and hobbies. (T 87-89)

Second, Plaintiff asserts that the ALJ failed to give proper weight to Plaintiff's GAF scores in deciding that Plaintiff's depression did not meet or equal the listing. In his decision, the ALJ noted that, in July 2002, Bharminder S. Bedi, M.D. ("Dr. Bedi"), a psychiatrist, diagnosed Plaintiff with an adjustment disorder with major depression; Dr. Bedi assigned Plaintiff a GAF score of 50 on July 24, 2002 and a GAF score of 55 on December 31, 2003. (T 15, 232, 236) A GAF score provides a snapshot of an individual's functioning. Diagnostic and Statistical Manual of Mental Disorders at 33 (4th ed.). Therefore, a GAF score is not considered to be in direct correlation to the severity requirements for disability claims and the Commissioner does not endorse a GAF score for use in the Social Security and SSI disability programs. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); Wind v. Barnhart, 133 Fed. App'x. 684, 692 n. 5 (11th Cir. 2005). Accordingly, the ALJ did not err in finding that Plaintiff's depression did not meet or equal the listing.

There is also no indication that Plaintiff's symptoms lasted for a continuous period of at least twelve months as required by the regulations. See 20 C.F.R. § 404.1505(a). Plaintiff first visited Dr. Bedi in July 2002 and Dr. Bedi recommended a reassessment in two weeks or earlier. (T 234-235) Nonetheless, Plaintiff waited until May 2003 to see Dr. Bedi again. (Id.) In May 2003, Dr. Bedi scheduled a followup appointment in June 2003. (T 234) Plaintiff, however, delayed seeking treatment with Dr. Bedi until November 2003. (T 233) In addition to missing appointments,

Plaintiff was often advised by Dr. Bedi to stay on his medications. (T 213-234) A failure to follow prescribed medical treatment will preclude a finding of disability. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004).

When Plaintiff did take his prescribed drugs, the medications were effective. In December 2003, Plaintiff advised Dr. Bedi that the medications were helping him; Dr. Bedi reported that Plaintiff's insight and judgment were fair, his mind was not racing, he was not in acute distress and he was not experiencing crying spells. (T 232) A medical condition reasonably controlled by appropriate medications is not disabling. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).

Finally, Plaintiff argues that the ALJ ignored the opinion of Plaintiff's treating physician who wrote that Plaintiff could not work because of his depressive disorder.[8] In May 2002, Dr. Bedi wrote that "He is unable to work." (T 234) It is unclear whether this statement reflects Plaintiff's comments to his doctor or Dr. Bedi's opinion on Plaintiff's mental condition. Even assuming this statement reflected Dr. Bedi's opinion of Plaintiff's condition in May 2002, by December 2003 Plaintiff's condition had improved. (T 232) In April 2004, Plaintiff reported to Dr. Bedi that he was not depressed. (T 231) Further, Dr. Bedi's treatment plan for Plaintiff was limited to advising Plaintiff to take his medications, to stop drinking alcohol, to attend AA meetings and not to drive.[9] (T 231-336) Significantly, Dr. Bedi did not include any limitations on Plaintiff's ability to work in

---

[8] Plaintiff's medical records and testimony suggest that he may have continued to work until June 2002. (T 134, 180, 316, 323-324)

[9] The medical evidence does not demonstrate that Plaintiff's inability to drive was caused by his depression. Instead, Dr. Bedi's advice not to drive is mentioned in connection with Plaintiff's use of alcohol. (T 234, 236) Where the medical records indicate alcohol abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination. Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001). Plaintiff had a suspended driver's license resulting from his failure to pay his child support payments since 2002. (T 146, 255)

Plaintiff's treatment plan. (Id.)

The opinions of two state agency psychologist are also consistent with the ALJ's finding that Plaintiff did not meet or equal the listing. (T 15) On January 21, 2003, Arthur H. Hamlin, Psy.D. ("Dr. Hamlin") diagnosed Plaintiff with depressive disorder but concluded that Plaintiff had only a mild degree of limitation in maintaining concentration, persistence or pace and no marked limitations. (T 158) Dr. Hamlin opined that Plaintiff's principal functional limitations were due to pain, not his depressive disorder. (T 160) In April 2003, Michael G. Dow, Ph.D. ("Dr. Dow") found that Plaintiff's depression did not have any marked degree of limitation on his functional limitation and therefore, did not meet the "B" criteria of 12.04 listing. (T 202)

A review of the evidence demonstrates that Plaintiff has not carried his burden in establishing that his severe depression met or equaled the requirements of the listing. There is substantial evidence which supports the ALJ's finding that Plaintiff's depression did not cause a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, deficiencies of concentration, persistence or pace, or repeated episodes of deterioration or decompensation in work or work-like settings.[10] Thus, the ALJ properly determined that Plaintiff did not meet or equal the requirements of Section 12.04 of the Listing.

**B.** Plaintiff contends that the ALJ failed to consider the combined effects of Plaintiff's exertional and non-exertional impairments in deciding that Plaintiff retained the RFC to perform a limited range

---

[10] Plaintiff does not rely on the opinion of consulting psychologist, Cecilia Yocum, Ph.D. ("Dr. Yocum") to support his argument that Plaintiff met or equaled the "B" criteria of Listing 12.04. Even assuming Plaintiff relies upon Dr. Yocum's opinion, Dr. Yocum concluded that Plaintiff's affect was appropriate, his speech was clear, coherent, logical and rational. (T 146) Further, Dr. Yocum found that while Plaintiff did exhibit some difficulty with short-term memory, his long-term memory was intact. (Id.) According to Dr. Yocum's notes, Plaintiff could do a little bit of housework and Plaintiff's judgment in common social situations was fair. (Id.)

of light work.

The ALJ must evaluate the combination of the claimant's impairments with respect to the effect they have on the ability to fill the duties of work for which he or she is otherwise capable of performing. Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990).

After discussing the opinions of Plaintiff's treating and consulting physicians, the ALJ found that Plaintiff retained the RFC to perform a limited range of light work. The ALJ held that Plaintiff must be allowed to sit or stand at will and Plaintiff was limited to the performance of simple, routine, repetitive work. (T 15-16) In his decision, the ALJ considered the combined effect of Plaintiff's impairments, as evidenced by his written decision. The ALJ found that Plaintiff's "impairments are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (T 14) This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

Plaintiff contends that there is no evidence in the record that supports a finding that he could lift the weight necessary to perform light work. In particular, Plaintiff contends that the ALJ improperly discounted a diagnosis of carpal tunnel syndrome and testimony that he could only lift two liters of liquids. (T 324- 325) There is no merit to Plaintiff's argument.

The assessments of Plaintiff's treating neurologists support the ALJ's determination that Plaintiff could perform a restricted range of light work. In June 2002, Thomas DiGeronimo, M.D. ("Dr. DiGeronimo") diagnosed Plaintiff with carpal tunnel syndrome of the right upper extremity. (T 135) Dr. DiGeronimo wrote that Plaintiff did have a "Tinel's and a Phalen's sign in the upper

extremity." (Id.)  As part of the treatment plan, Dr. DiGeronimo ordered a right upper extremity EMG and nerve conduction study.  (Id.)  The August 2002 test results failed to show any abnormalities of the upper right extremities.  (T 129)  In October 2002, Dr. DiGeronimo stated that Plaintiff could return to light duty types of work given his physical status.[11]  (T 128)  Likewise, in July 2002, Carmen Ramirez, M.D. ("Dr. Ramirez") noted that Plaintiff may not be able to return to his previous work, but will be able to return to some functionality and probably to a different type work environment.  (T 131)

Additionally, the assessments of the state consulting physicians are consistent with the ALJ's finding that Plaintiff could perform a restricted range of light work.  On November 2, 2002, Hamsaveni Kambam, M.D., ("Dr. Kambam") determined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and sit, stand and or walk about six hours in an 8 hour day.  (T 138)  In May 2003,  M. Ravipati, M.D. ("Dr. Ravipati") likewise concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and sit, stand and or walk about six hours in an 8 hour day.  (T 211)

Plaintiff further alleges that the ALJ failed to take into account Plaintiff's non-exertional impairment of depression, his inability to read or write, his difficulty in understanding and communicating in determining Plaintiff's RFC.  This court disagrees.

The ALJ discussed the opinions of Plaintiff's treating and consulting doctors in considering the impact Plaintiff's depression had on his RFC.  In December 2003 and April 2004, Dr. Bedi

---

[11] Dr. DiGeronimo concluded that Plaintiff's RFC was limited by his severe depression, anxiety and the effects secondary to alcohol abuse. (T 128) As discussed infra at 13, because Dr. DiGeronimo is not a mental health specialist, the ALJ was not required to give considerable weight to the neurologist's opinion on Plaintiff's mental illness.

reported that Plaintiff's depression was improving, his mind was not racing and he was not in acute distress. (T 231-232) Dr. Bedi did not recommend any functional limitations on Plaintiff's ability to work. (T 231-234) Dr. Hamlin, a state consulting psychologist, opined that Plaintiff's mental disorders resulted in mild difficulties in maintaining concentration, persistence and pace. (T 158) Dr. Dow, another state agency psychologist, concluded that Plaintiff was moderately limited in the following areas: (1) ability to remember detailed instructions, (2) ability to maintain attention and concentration for extended periods, (3) ability to complete a normal work-day and work week without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, (4) ability to accept instructions and respond appropriately to criticism from supervisors, and (5) ability to set realistic goals or make plans independently of others. (T 206-207).

Plaintiff contends that the ALJ failed to consider the opinion of a consulting psychologist that Plaintiff could not handle his financial affairs. Dr. Yocum stated that, if Plaintiff were awarded benefits, he would not be able to handle the his own financial affairs due to academic problems. (T 147) Illiteracy is a vocational factor, not a non-exertional impairment. See Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996)(illiteracy is not a nonexertional impairment). Moreover, the ALJ properly included Plaintiff's inability to read and write in his hypothetical to the vocational expert. (T 333)

Plaintiff next asserts that the ALJ's finding that Plaintiff could perform certain jobs is inconsistent with the Dictionary of Occupational Titles ("DOT"). Without providing any specific citations to the DOT, Plaintiff argues that there is an alleged conflict between the VE's testimony and the DOT in terms of whether the jobs plaintiff was capable of performing physically demanding work which entails lifting and carrying of heavy objects. Assuming arguendo that such a conflict existed,

11

the Eleventh Circuit announced in <u>Jones v. Apfel</u>, 190 F.3d 1224 (11th Cir. 1999), that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT" and that "an ALJ may rely solely on the VE's testimony." <u>Id.</u> at 1229-1230. This court has also examined the DOT and notes that, contrary to Plaintiff's arguments, the jobs of small products assembler (DOT 739.687-030), wrap and packager (DOT 920.686-038) and machine tender (DOT 556.685-038) are categorized as unskilled and light. Thus, the ALJ properly relied on the VE's testimony.

Based upon the record, there is substantial evidence to support the ALJ's determination that Plaintiff has the RFC for a limited range of light work.

**C.** Plaintiff claims that the ALJ failed to give improper weight to the opinions of Plaintiff's treating physicians.

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. <u>See</u> <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the ALJ may reject the opinion of a treating physician if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence. <u>Bloodsworth</u>, 703 F.2d at 1240. The opinions of a one-time examiner do not require the same type of deference as those of a treating physician. <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987).

Plaintiff argues that the ALJ disregarded the opinions of Plaintiff's treating physicians regarding Plaintiff's decreased range of motions in the lumbar area, tenderness and muscle spasms. (Dkt. 23 at 8) However, the ALJ did consider the opinions of Plaintiff's treating physicians. Dr. DiGeronimo diagnosed Plaintiff with lumbar strain, lumbar radiculitis, carpal tunnel syndrome of the right upper extremity and paraesthesia. (T 180, T 133-136) In October 2002, Dr. DiGeronimo stated that Plaintiff "can only return to light duty types of work given his physical status." (T128) In 2004,

Dr. Ramirez also diagnosed Plaintiff with lower back pain, lumbar radiculitis, muscles spasms and paraesthesia. (T 295, 298)  The ALJ noted that Mary Shriver, D.O. ("Dr. Shriver") performed a consultative neurological examination on Plaintiff in August 2004 and determined that Plaintiff had mild arthritis and a sprained back.  (T 15, 255-257) Although the ALJ considered Dr. Shriver's opinion that Plaintiff had no functional limitation, the ALJ determined that Plaintiff retained the RFC to perform a limited range of light work.  Specifically, the ALJ found that Plaintiff's capacity for light work is limited because he must be allowed to sit or stand at will.  (T 18)  Given the limitations on Plaintiff's RFC set forth by the ALJ, it is evident that the ALJ placed greater weight on the opinions of the treating physicians. Thus, there is no merit to Plaintiff's argument that the ALJ gave improper weight to the opinion of the consulting physician.

In reference to Plaintiff's severe depression,  Plaintiff maintains that the ALJ ignored his episodes of deterioration or decompensation cited by Ms. Jennifer Curtis, a physician's assistant and Dr. DiGeronimo, a neurologist (Dkt. 23 at 9, T 180).  Neither of these medical professionals have an expertise in mental health.   It is proper for an ALJ to give more weight to the opinion of a specialist with an expertise in an area than to the opinion of a source who is not a medical specialist. 20 C.F.R. § 404.15(d)(5); see <u>Mills v. Astrue,</u> 226 Fed. App'x 926, 930-931 (11th Cir. 2007).  Therefore, in deciding whether Plaintiff's depression  met or equaled the listing, the ALJ properly gave more weight to the opinion of Dr. Bedi, Plaintiff's treating psychiatrist.  (T 15)

**D.**     Plaintiff alleges that the ALJ erred in finding Plaintiff's testimony not wholly credible.  On this issue, a remand is required.[12]

---

[12] Although Plaintiff's argument on this issue is not well-developed (Dkt. 23 at 10-11), the Commissioner wholly fails to respond to this argument in his memorandum of law.  (Dkt. 27)

It is incumbent on the ALJ to make credibility findings as to a claimant's testimony. See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) that the medical evidence substantiates the severity of the pain from the condition or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote, 67 F.3d at 1562 (citation omitted).

Plaintiff testified that he was injured when he fell off a truck. (T 323) Plaintiff alleged he has "a lot of pain" in his leg as well as pain in his entire body, including his back, neck, head and arms. (T 318, 323) Plaintiff noted that his pain causes sleeping difficulties and daily headaches. (T 318-319, 327) When asked about his ability to stand and walk, Plaintiff answered that he can only stand for 15 minutes and walk three feet before sitting down. (T 322) Nevertheless, on the day of

the hearing, Plaintiff testified that he walked from the parking lot to the building. In walking to the building, Plaintiff felt "pain in the bottom of his legs and body." (T 323) During the day, Plaintiff explained that he tries "to move for a while, " but "I get to a point that I can't do it. I have to go lay down." (T 325) Plaintiff testified that he is sitting or laying down most of the day; he watches television and cooks "easy stuff." (T 326-327) Plaintiff said he felt "all right" sitting in the straight chair during the hearing. (T 326) Additionally, Plaintiff asserted that while the pain medications do not help all the pain, the medications take away some of the pain. (T 325-326)

In the instant case, the ALJ made minimal reference to Plaintiff's testimony. In his decision, the ALJ wrote that "[s]omewhat consistent with the allegations of the claimant," the medical evidence reflected that Plaintiff injured his leg when he fell from a truck while he was working as a laborer, and an ultrasound revealed that Plaintiff experienced a fatty liver likely due to excessive consumption of alcohol. (T 14) The ALJ's credibility finding, as to Plaintiff's testimony, was limited to stating that:

> The undersigned is cognizant that the residual functional capacity assigned to the claimant in the preceding paragraph is significantly less work-preclusive than that which is alleged to exist by the claimant. However, such allegations are simply not substantiated by the objective medical evidence in the record. In the absence of the objective clinical signs and laboratory findings required by the Social Security Act and regulations, it must be determined that the claimant is not fully credible within the parameters set forth in the Social Security Ruling 97-7p.

(T 16)

The ALJ failed to articulate explicit and adequate reasons for the weight given to the Plaintiff's testimony and statements and the reason for that weight. It is incumbent upon the ALJ to provide a record indicating the specific reasons for his finding on a credibility determination.

Simply stating that Plaintiff's allegations "are not substantiated by the objective medical evidence in the record" does not adequately apprise the court of the weight with which the ALJ viewed Plaintiff's allegations or why such a determination was made. See Foote, 67 F.3d 1562 (explicit credibility findings are necessary and crucial where subjective pain is an issue). While it is possible that the ALJ's findings arguably met the second prong of the pain standard (there was no objective medical evidence confirming the severity of the Plaintiff's alleged pain), the ALJ did not address whether Plaintiff's alleged impairments were of sufficient severity that his medical condition would be reasonably expected to produce the pain alleged.

Because the ALJ failed to properly assess the credibility of Plaintiff's pain testimony, it cannot be determined on the present record whether the ALJ's decision is supported by substantial evidence. Accordingly, this case is remanded for further consideration and specific findings as to whether there was objective medical evidence substantiating the severity of Plaintiff's alleged pain and, if not, whether Plaintiff's alleged impairments were of sufficient severity that his medical condition would be reasonably expected to produce the pain alleged. The court expresses no view as to what the result should be on remand.

## Conclusion

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) The decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings and consideration consistent with the foregoing; and

(2) The Clerk of Court is directed to enter final judgment pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand." Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida on this 24th day of September, 2007.

_____
ELIZABETH A JENKINS
United States Magistrate Judge